UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NGUYEN DUNG THANH, | No.  1:26-cv-00352 DC CSK |
| Petitioner, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| WARDEN OF GOLDEN STATE DETENTION FACLITY, | |
| Respondent. | |

Petitioner, an immigration detainee, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner is a native and citizen of Vietnam who adjusted to lawful permanent residence status on June 4, 1993.  On March 5, 2015, petitioner was detained by immigration officials upon his return to the United States and placed in removal proceedings.  On May 11, 2015, petitioner was ordered removed from the United States to Vietnam by an immigration judge.  On June 10, 2015, petitioner was released on an Order of Supervision.  On August 15, 2025, petitioner was re-detained by U.S. Immigration and Customs Enforcement ("ICE").  This habeas action concerns petitioner's re-detention.  For the following reasons, this Court recommends that the petition be granted in part and that petitioner be released.

---

[1]  Petitioner paid the filing fee and is proceeding without counsel.  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.      FACTUAL BACKGROUND

Petitioner is a native and citizen of Vietnam.  (ECF No. No. 10-1 at 1.)  The record contains no information regarding when petitioner first entered the United States.  Petitioner adjusted to lawful permanent resident status on June 4, 1993.  (Id. at 2.)

The government represents the following as to petitioner's criminal history:  On October 26, 1999, petitioner was convicted of assault causing bodily injury.  (ECF No. 10 at 2.) On September 29, 2009, petitioner was convicted of conspiracy to manufacture and possession with intent to distribute marijuana.  (Id.)  Petitioner did not file a reply or traverse responding to or contesting the government's assertions regarding his criminal history.

On March 5, 2015, petitioner arrived at the Dallas Fort Worth International Airport from and applied for admission to the United States as a returning lawful permanent resident.[2]  (ECF No. 10-1 at 2; ECF No. 12 at 2 ¶ 7.)  Petitioner was detained at the airport and placed into removal proceedings.  (ECF No. 10-1 at 3; ECF No. 12 at 2, ¶ 7.)

On May 11, 2015, an immigration judge ordered petitioner removed from the United States to Vietnam.  (ECF No. 12 at 2, ¶ 8; ECF No. 12-1 at 1-2.)  Both parties waived appeal. (ECF No. 12 at 2, ¶ 8; ECF No. 12-1 at 1-2.)  On June 8, 2015, ICE granted petitioner an administrative stay of removal because ICE found there was no significant likelihood of removal in the reasonably foreseeable future because Vietnam was not accepting deportees who entered the United States before July 12, 1995.  (ECF No. 12 at 2, ¶¶ 9, 11; ECF No. 12-2 at 1.)  The June 8, 2015 notification to petitioner regarding the administrative stay stated that reporting requirements would be outlined in an Order of Supervision, which petitioner must abide by otherwise the administrative stay would be revoked.  (ECF No. 12 at 2, ¶ 10; ECF No. 12-2 at 1.) On June 10, 2015, petitioner was released under an Order of Supervision.  (ECF No. 12 at 2, ¶ 11; ECF No. 12-3.)  The Order of Supervision informed petitioner that he was permitted to be at large under several conditions, including that he not commit any crimes while under the Order of

---

[2]   The record is inconsistent as to whether petitioner was returning from Japan (ECF No. 10-1 at 2) or from Vietnam (ECF No. 12 at 2, ¶ 7).  The Court need not resolve this factual dispute as it does not impact the Court's analysis.

Supervision.  (ECF No. 12 at 2-3, ¶ 11; ECF No. 12-3 at 1-3.)  The Release Notification accompanying the Order of Supervision informed petitioner that ICE would continue to make efforts to obtain travel documents that would allow the United States government to remove petitioner.  (ECF No. 12-3 at 4.)  The Release Notification also advised petitioner that, by law, petitioner was required to continue to make good faith efforts to secure a travel document on his own and provide proof of efforts to ICE.  (Id.)

On August 15, 2025, petitioner reported to the ICE Office at 8101 N. Stemmons Freeway, Dallas, Texas, and was taken into custody.  (ECF No. 10-2 at 2; ECF No. 12 at 3, ¶ 13.)  A Warrant of Removal/Deportation was issued on August 15, 2025.  (ECF No. 12 at 3, ¶ 13; ECF No. 12-4 at 1-2.)  The Notice of Revocation Release issued by ICE on August 15, 2025 states that petitioner's Order of Supervision was revoked because ICE determined that there are changed circumstances; petitioner's case was currently under review by Vietnam for issuance of a travel document; "pursuant to 8 C.F.R. § 241.4/ 8 C.F.R. § 241.13," petitioner will remain in ICE custody; and that petitioner must demonstrate that petitioner is making reasonable efforts to comply with the order of removal and that petitioner is cooperating with ICE's efforts to remove petitioner by taking whatever actions ICE requests to affect his removal.  (ECF No. 12-5 at 1.)

On November 18, 2025, a deportation officer served petitioner with an instruction sheet about the requirements to assist in removal.  (ECF No. 12 at 3, ¶ 15; ECF No. 12-6 at 2.)  This instruction sheet contains a list of things that petitioner is required to complete within 30 days of receiving the form to comply with petitioner's obligation to assist in obtaining a travel document.  (ECF No. 12-6 at 2.)  This list includes submitting a passport, applying for travel documents/passports from your embassy, complying with all instructions from all embassies or consulates requiring completion of documentation for issuance of travel documents, etc.  (Id.)  Petitioner also received a Form I-229, Warning for Failure to Depart.  (ECF No. 12 at 3, ¶ 15; ECF No. 12-6 at 1.)

On November 18, 2025, ICE served petitioner with a Notice to Alien of File Custody Review, informing petitioner that his custody status would be reviewed on December 1, 2025 for consideration of release on an Order of Supervision.  (ECF No. 12 at 3, ¶ 16; ECF No. 12-7 at 1-

3

2.) On December 5, 2025, ICE served petitioner with a Decision to Continue Detention, informing petitioner that ICE determined that petitioner would not be released from ICE custody. (ECF No. 12-8.)

On January 21, 2026, petitioner refused to fill out the Self-Declaration form and Declaration for passport renewal. (ECF No. 12 at 3, ¶ 18.) Petitioner told the deportation officer that he did not want to cooperate and follow the terms on Form 1-229, Warning for Failure to Depart. (Id. at 3-4, ¶ 18.) Petitioner told the deportation officer that he did not know anything about his address, parents, or anything about his time in Vietnam. (Id. at 4, ¶ 18.) On February 3, 2026, a deportation officer served petitioner with a new I-229 form. (Id. at 4, ¶ 19.) Petitioner refused to sign and acknowledge the form. (Id. at 4, ¶ 19.)

**II.     PROCEDURAL BACKGROUND**

On January 16, 2026, petitioner filed his petition for writ of habeas corpus raising four claims for relief, using what appears to be a form petition. (ECF No. 1.) In claim one, petitioner argues that his continued detention in immigration custody violates the Due Process Clause of the Fifth Amendment because there is no significant likelihood that petitioner will be removed in the foreseeable future. (Id. at 13-14.) In claim two, petitioner argues that ICE's third country removal procedures violate the Fifth Amendment, 8 U.S.C. § 1231, the Convention Against Torture, implementing regulations and the Administrative Procedure Act. (Id. at 14-15.) In claim three, petitioner argues that ICE's third country removal procedures violate the Fifth and Eighth Amendments as punitive third-country banishments. (Id. at 15-16.) In claim four, petitioner argues that his continued detention violates 8 C.F.R. § 241.13. (Id. at 17-18.)

On January 27, 2026, this Court directed respondents to file a response to the petition within seven days and ordered that petitioner may file a reply within ten days after being served with the response. (ECF No. 3.)

On February 2, 2026, petitioner filed a motion for appointment of counsel. (ECF No. 5.) On February 3, 2026, respondents filed an answer and a motion for a five-day extension of time to file an answer. (ECF Nos. 9, 10.) In the motion for extension of time, respondents state that they have requested documents relevant to the determination of the issues presented but

respondents' counsel did not learn of this case until February 3, 2026.  (ECF No. 9 at 1.)  On February 5, 2026, respondents filed a declaration from a deportation officer with supplemental documents in support of the answer.  (ECF No. 12.)  Good cause appearing, respondents' motion for extension of time is granted and the supplemental documents filed February 5, 2026 are deemed timely filed.  Petitioner did not file a reply to the answer.

On February 17, 2026, petitioner filed a motion for a temporary restraining order.  (ECF No. 13.)  On February 28, 2026, the Honorable Dena M. Coggins denied petitioner's motion for a temporary restraining order as untimely.  (ECF No. 14.)  On February 17, 2026, petitioner also filed a motion for release.  (ECF No. 15.)  This motion is denied as unnecessary because this Court recommends that the petition be granted and that petitioner be released.

### III.    PROPER RESPONDENT

Respondents move to dismiss all improperly named respondents.  (ECF No. 10 at 1 n.1.)  In addition to the Warden of the Golden State Detention Facility, where petitioner is currently detained, petitioner names the United States Attorney General, the Security of Homeland Security and the Acting Director of ICE.  (ECF No. 1 at 1.)   "[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held ...."  Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004).  The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees."  Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024).

Because petitioner is currently detained at the Golden State Detention Facility, the Warden of that facility is the proper respondent.  Respondents' request is granted and the other named respondents are dismissed, leaving the Golden State Detention Facility Warden as the sole respondent.

### IV.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004)

5

(citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## V.    DISCUSSION

In the answer, respondent addresses petitioner's claims on the merits and also as having been brought pursuant to a motion for a temporary restraining order.  (ECF No. 10 at 1.)  This appears to be because the caption of the petition is labeled "Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Request for Injunctive Relief."  (ECF No. 1 at 1.)  Given that the district judge has already addressed petitioner's motion for a temporary restraining order that was subsequently filed (ECF Nos. 13, 14), these findings and recommendations address the merits of the petition.

### A.    Claims One and Four

In claim one, petitioner argues that his continued re-detention violates his right to due process.  (ECF No. 1 at 13-14.)  In claim four, petitioner argues that his re-detention violates 8 C.F.R. § 241.13.  (Id. at 17-18.)  Because these claims require examination of whether the government followed its own regulations that set out procedures for revoking release, procedures that protect important due process rights, the Court discusses these claims together.  See Vu v. Noem, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025); Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").

Respondent argues that petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(2).  (ECF No. 10 at 4.)  Pursuant to 8 U.S.C. § 1231(a)(1), the Attorney General of the United States

shall remove a noncitizen within 90 days, which is referred to as the "removal period."  8 U.S.C. § 1231(a)(1)(A).  The removal period begins on the latest of the following: (i) the date the removal order becomes administratively final; (ii) if the removal order is judicially reviewed and a stay of removal is ordered, the date of the court's final order; or (iii) the date the noncitizen is released from detention or confinement.  8 U.S.C. § 1231(a)(1)(B).  During the removal period, the noncitizen shall be detained.  8 U.S.C. § 1231(a)(2).  If the noncitizen is not removed within the removal period, the noncitizen shall be released and subject to supervision with certain conditions.  8 U.S.C. § 1231(a)(3).  Here, it is clear that the 90-day removal period has long passed where both parties waived appeal from the May 11, 2015 order by the immigration judge that petitioner be removed to Vietnam.  (ECF No. 12-1 at 1-2.)  For these reasons, this Court finds that petitioner is not presently detained pursuant to 8 U.S.C. § 1231.

It is undisputed that at the time of his re-detention, petitioner was on release under an Order of Supervision dated June 10, 2015.  (ECF No. 12-3.)  Such a release is made if the government "determines that the alien would not pose a danger to the public or a risk of flight."  8 C.F.R. § 241.3(b).  A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed.  Section 241.13(i) permits revocation of release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  As stated above, the Notice of Revocation Release dated August 15, 2025 states that petitioner's order of supervision was revoked based on "changed circumstances" because ICE determined that petitioner could be expeditiously removed from the United States to Vietnam.  (ECF No. 12-5 at 1.)

In the answer, respondent claims that ICE revoked petitioner's release after petitioner committed new crimes in violation of the conditions of his release.  (ECF No. 10 at 6.)  But this is flatly contradicted by the Notice of Revocation Release issued to petitioner, which expressly states that petitioner's order of supervision was revoked based on changed circumstances.  (ECF No. 12-5 at 1.)  Petitioner's Notice of Revocation Release does not identify any violations of release conditions, and the section to be completed for revocation based on release violations was

7

left blank.  (Id.)  For this reason, this Court finds that based on the government's own revocation notice, ICE did not revoke petitioner's Order of Supervision based on violations of the conditions of his release.

Respondent also argues that petitioner is detained pursuant to 8 C.F.R. § 241.4(g)(2), (3). (ECF No. 10 at 6-7.)  Respondent argues that, under Section 241.4(g)(2), (3), when a noncitizen is detained, the governing regulations provide that a noncitizen will not be released from custody if in the judgment of the Service travel documents can be obtained or are forthcoming.  (Id. at 7.) The regulations cited by respondent concern custody review procedures for detainees.  See 8 C.F.R. §§ 241.4(b)(4), (g)(2), (3).  These regulations are not relevant to the determination of whether changed circumstances existed at the time of petitioner's re-detention on August 15, 2025.  This Court also observes that on December 5, 2025, after reviewing petitioner's custody, ICE did not continue petitioner's detention based on a finding that travel documents were forthcoming pursuant to 8 C.F.R. § 241.4(g)(2), (3).  (ECF No. 12-8 at 1.)

Citing Zadvydas, respondent also argues that petitioner has the initial burden to show that there is no significant likelihood of removal in the reasonably foreseeable future.  (ECF No. 10 at 5.)  Zadvydas dealt with a noncitizen who had been detained and never released following a final order of removal.  Zadvydas, 533 U.S. at 701.  In that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing."  Id.

However, the burden-shifting framework from Zadvydas does not apply as to petitioner's challenge to his re-detention.  As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in Zadvydas."  Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Yan-Ling X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025).  As in Nguyen, "[t]his case is about ICE's authority to re-detain [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]."  Nguyen, 788 F. Supp. 3d at 149.  "[T]his is not your typical first round detainment of an alien awaiting removal.  Petitioner

8

was previously detained, then released on supervised release for several years, and his 90-day removal period expired." Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

The regulations at 8 C.F.R. § 241.13(i) apply to non-citizens in petitioner's situation. Those regulations indicate that when ICE revokes release to effectuate removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed." Escalante, 2025 WL 2206113, at *3; see also Roble v. Bondi, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."). As the district court in Escalante found, "[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications." Escalante, 2025 WL 2206113, at *3. Therefore, the Court must determine whether respondent has met its burden to show a changed circumstance indicating a significant likelihood of removal.

In the answer, respondent argues that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future because in November 2020, the United States and Vietnam signed a Memorandum of Understanding ("MOU") regarding the process for the deportation of certain citizens to Vietnam who entered the United States prior to 1995. (ECF No. 10 at 5.) In support of the answer, respondent submitted a declaration by a deportation officer who states "[c]onsidering the [November 2020] agreement [between the United States and Vietnam], on August 15, 2025, petitioner was detained by ICE…" (ECF No. 12 at 3.) The deportation officer also states, "I am familiar with similarly situated detainees who have obtained travel documents from the government of Vietnam and been removed. ICE is currently trying to obtain travel documents for Petitioner without Petitioner's cooperation." (Id. at 4.)

For the following reasons, this Court finds that respondent has not met its burden of demonstrating that there is a significant likelihood that petitioner will be removed to Vietnam in the reasonably foreseeable future. Respondent fails to address what changed circumstance

9

occurred during the almost five years between the November 2020 MOU and petitioner's August 15, 2025 re-detention making petitioner's removal more likely now, or why Vietnam is likely to issue a travel document for petitioner in the reasonably foreseeable future. See Yan-Ling, 2025 WL 3123793, at *4 (citing Hoac v. Becerra, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."). "An undue delay in removal for an individual alien beyond the typical removal period would naturally suggest that removal is unlikely." Chun Yat Ma v. Asher, 2012 WL 1432229, at *5 (W.D. Wash. Apr. 25, 2012).

Respondent also does not explain whether removals to Vietnam are common, do not identify what considerations the Government of Vietnam might take into account when deciding whether to issue a travel document, and do not explain whether the Government of Vietnam will look favorably on petitioner's case. See Yan-Ling, 2025 WL 3123793, at *3 (citing Liu v. Carter, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding that the respondents had not shown that removal was reasonably foreseeable where they did not provide evidence why seeking travel documentation was more likely to be successful this time around or describe other actions taken to make the petitioner's removal more likely). The phrase "significant likelihood" requires something more than a mere possibility that removal will occur. Evidence that "there is at least some possibility" that the designated country of removal "will accept Petitioner at some point…is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future." Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025). The deportation officer's conclusory statement that he is familiar with similarly situated detainees who have obtained travel documents from the government of Vietnam and been removed does not demonstrate that petitioner's removal is significantly likely in the reasonably foreseeable future.

Re-detention is permissible only if ICE can show there is a significant likelihood of removal in the reasonably foreseeable future. See 8 C.F.R. § 241.13(i). ICE re-detained petitioner on August 15, 2025 without making that showing and without complying with its own regulations. "ICE, like any agency, 'has the duty to follow its own regulations.'" Rombot v.

Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003); see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130 (2d Cir. 2020) ("[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265–68 (1954).

This Court also observes that Section 241.13(i)(2) requires that the determination that changed circumstances will result in the noncitizen's removal in the reasonably foreseeable future is made *before* the removable noncitizen has had their release revoked. See Duong v. Charles, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025); Tran v. Noem, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025); Sphabmixay v. Noem; 2025 WL 3034071, at *2 (S.D. Cal. Oct. 3, 2025). Here, the record does not show that a changed-circumstance determination was made at or before petitioner's re-detention on August 15, 2025. To the extent the changed circumstance could be based on travel documents requested after petitioner's re-detention, petitioner's re-detention violates § 241.13(i)(2) because a changed-circumstance determination was not made at or before petitioner' re-detention on August 15, 2025. This Court also finds that petitioner's alleged failure to cooperate with ICE officials in obtaining documents for his removal after his re-detention does not demonstrate that changed circumstances existed before or at the time of petitioner's re-detention on August 15, 2025.

When revoking a petitioner's release pursuant to § 241.13(i)(2) based on changed circumstances, the petitioner "must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition, as allowed under § 241.13(i)(3)." Sarail v. Bondi, --- F. Supp. 3d ----, 2025 WL 2533673, at *10 (D. Minn. Sept. 3, 2025). By stating that "ICE has determined that you can be expeditiously removed from the United States…to Vietnam," the Notice of Revocation Release did not give petitioner adequate notice of the changed circumstances. The Notice of Revocation Release also states, "Your case is under current review by Vietnam for the issuance of a travel document." (ECF No. 12-5 at 1.) This statement does not appear accurate because over three months later on November 18, 2025, the petitioner was provided with an

11

instruction sheet on how to assist with obtaining a travel document and because the detention officer's declaration stated that "ICE is currently trying to obtain travel documents…" (ECF No. 12-6 at 2; ECF No. 12 at 4, ¶ 20.)

Petitioner also claims that he did not receive a prompt informal interview following his re-detention. (ECF No. 1 at 17.) 8 C.F.R. § 241.13(i)(3) requires a prompt interview following re-detention: "Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." The Notice of Revocation Release also repeated these requirements regarding the prompt provision of an informal interview where petitioner would "be given an opportunity to respond to the reasons for the revocation." (ECF No. 12-5 at 1.) Respondent does not address petitioner's claim that he did not receive a prompt informal interview following his re-detention where he was provided the opportunity to respond to the reasons for revocation. (See ECF No. 10.)

The Court finds that respondent violated the government's own regulation, 8 C.F.R. § 241.13. Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Id. Respondent's failure to notify petitioner of the specific reasons for revocation beyond ICE's determination that petitioner could be "expeditiously removed," inaccurate statement in the Notice of Revocation Release that petitioner's case was under review by Vietnam for travel documents, and failure to provide petitioner with a prompt

///

///

12

interview following his re-detention violated 8 C.F.R. § 241.13(i)(3).[3]  The notice requirement is important because it provides the noncitizen with notice of the reasons for his revocation, and an opportunity to meaningfully respond to the reasons for revocation and submit evidence in opposition, as permitted under § 241.13(i).  Hashemi v. Noem, 2025 WL 3468694, at *5 (C.D. Cal. Nov. 19, 2025) (collecting cases).  Further, respondents do not assert or present any evidence that petitioner was granted an informal interview or provided with an "opportunity to respond to the reasons for revocation," as required by 8 C.F.R. § 241.13(i)(3) and described in the Notice of Revocation.  (See ECF Nos. 10, 12.)

Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.'"  Rombot, 296 F. Supp. 3d at 388 (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)); see also Truong v. Noem, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 6, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.") (collecting cases).

This Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  When the government grants a noncitizen parole or supervised release, it creates a protected liberty interest subject to due process clause protection.  See Sanchez v. LaRose, 2025 WL 2770629 (S.D. Cal. Sept. 26, 2025).  These protections include at least notice and an opportunity to be heard regarding the revocation.  Id.; Mathews v. Eldridge, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against

---

[3]  Petitioner is subject to a final order of removal, which he has not appealed.  (See ECF No. 12-1.)  The government may revoke petitioner's supervision and remove petitioner, but must do so lawfully, following the requirements of the Constitution and its own regulations.  It has failed to do so here.

him and the opportunity to meet it."). In Saengphet v. Noem, the district court ruled that notices revoking protected liberty interests are constitutionally inadequate when they lack individualized explanations of the changed circumstances giving rise to revocation. See 2025 WL 3240808, at *5 (S.D. Cal. Nov. 20, 2025). Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient. See Sanchez, 2025 WL 2770629, at *3; Ying Fong v. Ashcroft, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004) ("The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner."). A detainee's opportunity to be heard is not meaningful if the detainee has not been informed of the circumstances of his revoked release in a manner sufficient to allow his response. See Sarail A. v. Bondi, 2025 WL 2533673, at *10 (D. Minn. Sept. 3, 2025).

While this Court recognizes that the government has an interest in enforcing immigration laws, the government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of his release is low. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Respondent identifies no reason why adequate notice and an informal interview "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification" were not provided to petitioner as required by their own regulations. See 8 C.F.R. § 241.13(i)(3).

For the reasons above, this Court recommends that the petition be granted as to claims one and four alleging that petitioner's re-detention is unlawful because the government failed to demonstrate a significant likelihood of petitioner's removal to Vietnam in the reasonably foreseeable future, and because the government failed to comply with its own regulations regarding the revocation of petitioner's release set forth at 8 C.F.R. § 241.13(i).

**B.      Claims Two and Three**

In claim two, petitioner argues that ICE's current procedures for removal of detainees to

third countries violate the Fifth Amendment, the INA, the Convention Against Torture, implementing regulations and the Administrative Procedure Act. (ECF No. 1 at 14-15.)  In claim three, petitioner argues that punitive third country banishment violates the Eighth and Fifth Amendments.  (Id. at 15-16.)  In the answer, respondent argues that there is no evidence that ICE has any intent to remove petitioner to a third country.  (ECF No. 10 at 9.)  For the following reasons, this Court finds that petitioner lacks standing to raise his claims challenging ICE's third country removal procedures.

To establish Article III standing, a party must allege an injury that is "concrete and particularized," "actual or imminent," and likely to be "redressed by a favorable" judicial decision.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992).  The petition appears to be a form petition and the record before the Court does not indicate that third country removal is at issue.  (See ECF Nos. 1, 10, 10-1, 10-2, 12, 12-1 to 12-8.)  Because nothing before the Court shows any basis for petitioner's third country removal claims, this Court finds that petitioner lacks standing to raise his third country removal claims at this time and those claims should be denied.

**C.     Remedy**

Based on the recommendation that the petition be granted as to claims one and four, this Court recommends that petitioner be immediately released to return him to the status quo before the pending controversy.  See Yang v. Kaiser, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").  Because petitioner challenges his current re-detention, the last uncontested status of petitioner was his release under the June 10, 2015 Order of Supervision before his re-detention on August 15, 2025.

**VI.     MOTION FOR APPOINTMENT OF COUNSEL**

On February 2, 2026, petitioner filed a motion for appointment of counsel.  (ECF No. 5.)  Because this Court recommends that the petition be granted, petitioner's motion for appointment of counsel is denied as unnecessary.

///

## VII.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.  Respondents United States Attorney General, Security of Homeland Security and the Acting Director of ICE are dismissed.

2.  Petitioner's motion for appointment of counsel (ECF No. 5) is denied as unnecessary.

3.  Respondent's motion for an extension of time (ECF No. 9) is granted.

4.  Petitioner's motion for release (ECF No. 15) is denied as unnecessary.

IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus be GRANTED as to claims one and four, and DENIED as to claims two and three.

2.  Petitioner Nguyen Dung Thanh be immediately released from ICE custody under the same conditions he was previously released in his June 10, 2015 Order of Supervision. Respondent be ordered to provide petitioner with a copy of the release order at or near the time of release.  If respondent has custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondent be ordered to return those to petitioner at the time of release. Respondent be enjoined and restrained from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation of release, and any other applicable statutory and regulatory procedures.

3.  Within **seven days** of the adoption of these findings and recommendations, respondent be ordered to file a status report addressing petitioner's status.

4.  The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be

filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 23, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Than352.157.imm/2

17